1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7

UNITED STATES OF AMERICA,

8

Plaintiff,

9

v.

10

CHAUNCY ANDERSON,

11

Defendant.

Case No. 2:13-cr-00361-KJD-GWF

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

12

Before the Court is Defendant's Motion for Compassionate Release from Incarceration

13

(#221). The United States responded in opposition (#224) to which Defendant replied (#225).

14

I.      Factual and Procedural Background

15

Chauncy Anderson's ("Anderson") conviction stems from a scheme to create and

16

distribute controlled substances. (#224, at 2–4). Anderson and his co-defendants were purchasing

17

methylone from sellers in China. Id. at 2. Customs and Border Protection intercepted one of the

18

shipments and found that it was addressed to Anderson's shell company in Las Vegas. Id. The

19

Department of Homeland Security became involved in the investigation and attempted a

20

controlled delivery of the package to Anderson and his co-defendants at the Las Vegas address.

21

Id. at 3. The agent contacted co-defendant Alia Bober ("Bober") and informed her that she would

22

have to sign for the package. Id. Shortly thereafter, co-defendant Taylor Fairchild ("Fairchild"),

23

impersonating Bober, signed for the package. Id. Fairchild consented to a search of her

24

apartment where law enforcement officers discovered over 6,000 capsules filled with methylone.

25

Id. at 4. Fingerprint analysis found Anderson's prints on the bags storing the pills. Id.

26

A grand jury indicted Anderson, charging him with four counts: conspiracy to

27

manufacture and possess with the intent to distribute methylone, possession with the intent to

28

manufacture and distribute methylone, conspiracy to commit money laundering, and money

1   laundering. Id. Anderson pleaded guilty to conspiracy to possess with the intent to distribute

2   methylone. Id. The Court sentenced Anderson to 108 months in prison, followed by three years

3   of supervised release. Id.

4        Anderson made a request with the warden of his Bureau of Prisons ("BOP") facility for

5   compassionate release on June 6, 2020 and again on June 10, 2020.[1] (#221, at 4). According to

6   Anderson, the warden failed to respond to his requests. Id. Anderson then filed this motion on

7   July 10, 2020. Id. at 18.

8        II.   Legal Standard

9        The district court that imposed sentence on a criminal defendant has authority to modify

10  the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as

11  amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

12  That statute provides, in relevant part:

13  > [T]he court, upon motion of the Director of the Bureau of Prisons,
14  > or upon motion of the defendant after the defendant has fully
    > exhausted all administrative rights to appeal a failure of the Bureau
15  > of Prisons to bring a motion on the defendant's behalf or the lapse of
    > 30 days from the receipt of such a request by the warden of the
16  > defendant's facility, whichever is earlier, may reduce the term of
    > imprisonment (and may impose a term of probation or supervised
17  > release with or without conditions that does not exceed the unserved
    > portion of the original term of imprisonment), after considering the
18  > factors set forth in section 3553(a) to the extent that they are
    > applicable, if it finds that […]extraordinary and compelling reasons
19  > warrant such a reduction […] and that such a reduction is consistent
    > with applicable policy statements issued by the Sentencing
20  > Commission[.]

21  18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(1)(A)(i).

22       If the defendant has exhausted administrative remedies, the analysis is twofold. First, the

23  Court must consider the same factors applicable at the original sentencing, enumerated in 18

24  U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. 18

25  U.S.C. § 3582(c)(1)(A). Second, the Court must find "extraordinary and compelling reasons" to

26  release a defendant from Bureau of Prisons ("BOP") custody in a policy statement. Id.

27

28      [1] The government argues that Anderson did not request compassionate release from the warden. However, it
    cites to no evidence to support its claim and the Court has no reason to distrust Anderson's claim that he made such
    requests with the warden.

1      III.    <u>Analysis</u>

2          The Court must first consider the same factors applicable at the original sentencing,

3  enumerated in 18 U.S.C. § 3553(a). Those factors include the nature and circumstances of the

4  offense, the need for the sentence imposed, the kinds of sentences available and sentencing

5  ranges established in the guidelines, pertinent policy statements, the need to avoid unwarranted

6  sentence disparities, and the need to provide restitution. 18 U.S.C. § 3553(a). The Court

7  considered these factors on the day of sentencing and finds that they warrant the sentence as it

8  stands today.

9          Next, the Court determines whether "extraordinary and compelling reasons" exist that

10 justify a release, relying on the BOP policy statement.[2] The Court finds that Anderson cannot

11 show an extraordinary and compelling reason to justify his release. Anderson has mild asthma,

12 but no other underlying health conditions that put him at additional risk. The Centers for Disease

13 Control and Prevention ("CDC") states that people "with moderate to severe asthma *may* be at a

14 higher risk of getting very sick from COVID-19." CENTERS FOR DISEASE CONTROL AND

15 PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html

16 (las visited Jan. 20, 2021) (emphasis added). The government argues that Anderson's mild

17 asthma does not put him in this category, as it only mentions "moderate to severe asthma."

18 However, the CDC does not state that asthma places individuals at higher risk, only that it may

19 be possible. There now exists more data and a better understanding of COVID-19 than there was

20 when the pandemic began. Studies have been conducted to research the impact COVID-19 has

21 on patients with asthma. One such study found that "unlike influenza and other viruses the

22 [COVID-19] burden in patients with asthma has been less evident." Jose Luis Izquierdo, et al.,

23 <u>The Impact of COVID-19 on Patients with Asthma</u>, EUROPEAN RESPIRATORY JOURNAL (Nov. 5,

24 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7651839/. The study also found that

25 patients "with asthma who also had a diagnosis of COVID-19 were older, predominantly

26 women, and had higher prevalence of hypertension, dyslipidemia, diabetes, obesity, and smoking

27 

28

---

[2] The United States did not argue that Anderson would be a danger to the public upon release. As such, that portion of the analysis is not included.

1    habits than asthmatic individuals without COVID-19." Id. "The higher prevalence of

2    hypertension, dyslipidemia, diabetes, and obesity was further confirmed in those patients

3    requiring hospital admission, as compared with those who only required outpatient

4    management." Id. The presence of other comorbidities appears to place individuals at a greater

5    risk of danger from COVID-19 than asthma alone. Although the study shows "a higher

6    frequency of COVID-19 in patients with asthma, the manifestation of the disease in this clinical

7    population was not particularly severe." Id. Asthma does not appear to put Anderson at any

8    additional severe risk and does not constitute an extraordinary and compelling reason for release.

9        Anderson also argues that denying him compassionate release constitutes a cruel and

10   unusual punishment and thus violates his constitutional rights. Anderson relies on Helling v.

11   McKinney, 509 U.S. 25 (1993), to argue that "the BOP must take sufficient protective measures

12   to prevent contraction of COVID-19 in the jail population" and that "[u]nreasonable risk of

13   COVID-19 contraction will, in itself, constitute an Eighth Amendment violation." (#221, at 15).

14   Helling involved an inmate whose cellmate smoked five packs of cigarettes per day. Helling, 509

15   U.S. at 28. The Supreme Court recognized that McKinney, the inmate, had a cause of action

16   under the Eighth Amendment due to the prison's "deliberate indifference" to his future health.

17   Id. at 35. Additionally, the Court remanded the case so McKinney could prove that his treatment

18   violated the Eighth Amendment. Id. at 37. However, the BOP is not acting with such deliberate

19   indifference to Anderson's future health. The BOP has taken measures to prevent the spread of

20   COVID-19 in its facilities and maintain the health of its inmates. These measures include

21   suspending visitation but adding phone time, limiting movement to prevent congregations,

22   performing COVID-19 screenings for all new intakes, and suspending staff training and travel.

23   BOP MODIFIED OPERATIONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited

24   Jan. 22, 2021). Additionally, the BOP has emphasized home confinement, even without judicial

25   interference, for those at high risk and "significantly increased its placement of offenders on

26   home confinement." FREQUENTLY ASKED QUESTIONS REGARDING POTENTIAL INMATE HOME

27   CONFINEMENT IN RESPONSE TO THE COVID-19 PANDEMIC,

28   https://www.bop.gov/coronavirus/faq.jsp#:~:text=Since%20the%20release%20of%20the,of%20

offenders%20on%20home%20confinement (las visited Jan. 22, 2021). Finally, the BOP has begun vaccinating both staff and inmates and "leads all jurisdictions and Federal entities in its rate of vaccination utilization." COVID-19 VACCINATION EFFORTS COMMENDED, https://www.bop.gov/resources/news/20210116_covid_vaccine_efforts_commended.jsp (last visited Jan. 22, 2021). These measures indicate much more than deliberate indifference toward Anderson's health and Anderson's constitutional rights argument is denied.

Accordingly, because Anderson cannot show that extraordinary and compelling reasons exist to justify his release, his motion is denied.

IV.    Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Compassionate Release (#221) is **DENIED**.

Dated this 25th day of January, 2021.

_____
Kent J. Dawson
United States District Judge